**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEMARCUS PURHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-13051 |
| v. | ) | |
| | ) | District Judge Andrea R. Wood |
| BUSHMAN EQUIPMENT, INC., & | ) | Magistrate Judge Keri L. Holleb Hotaling |
| HUNTER LIFT HOLDING, LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| HUNTER LIFT HOLDING, LTD., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A. FINKL & SONS, CO., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Demarcus Purham alleges he suffered a workplace injury on June 7, 2023, when the tong Plaintiff used to lift and move a 5,000 pound steel billet fell on Plaintiff's leg, causing severe injuries and leading to amputation of Plaintiff's leg. [Dkt. 69 at 2; Dkt. 29 (the "Second Amended Complaint at Law") at 32.] Plaintiff was transported to the University of Chicago Medical Center where he underwent a below-the-knee amputation. [Dkt. 69 at 2.] According to Plaintiff, while at the University of Chicago Medical Center, Plaintiff's physicians contacted his mother who provided the physicians with a medical history. *Id*. Included with this medical history was an incident from November 2022.[1] *Id*. References to this November 2022 incident were included in Plaintiff's patient medical records which were produced with Plaintiff's Rule 26 disclosures. [Dkt. 64.]

---

[1]   Given the sensitive nature of the November 2022 incident, and to avoid detailing any part of Plaintiff's confidential medical history, the Court does not describe the November 2022 incident in this Memorandum Opinion and Order.

Before this Court now is Defendant/Cross-Plaintiff Hunter Lift Holding, Ltd.'s ("Hunter Lift") Motion to Compel Additional Deposition of Plaintiff, Names of His Treaters, and for Subpoenas for His Medical Records and Treater Depositions (the "Motion to Compel") [Dkt. 64], essentially seeking discovery related to the November 2022 incident referenced in Plaintiff's medical records. The alleged incident and resulting injury which are the subject of *this* lawsuit did not occur until June 7, 2023, approximately six months *after* the November 2022 incident for which Defendant Hunter Lift seeks discovery. [Dkt. 64.] Plaintiff filed a response to Defendant's Motion to Compel asserting privilege as to the requested discovery. [Dkt. 69.] Plaintiff and Defendant Hunter Lift each also submitted documents for in-camera review with their motion and response. The Court held an in-person motion hearing on May 28, 2026. [Dkt. 70.] After hearing oral arguments, the Court offered Plaintiff and Defendant Hunter Lift an opportunity to file supplemental briefs. [Dkt. 70.] Plaintiff and Defendant Hunter Lift each filed supplemental briefs on June 8, 2026. [Dkts. 71, 72.] For the reasons discussed below, Defendant Hunter Lift's Motion to Compel [Dkt. 64] is DENIED.

## I. <u>Procedural History and Governing Law</u>

In November 2024, Plaintiff filed this suit in the Circuit Court of Cook County, Illinois, and Defendant Bushman Equipment, Inc. later removed the case to this Court based on diversity jurisdiction. [Dkt. 1.] The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and Plaintiff is a citizen of Illinois while Defendant Bushman Equipment, Inc. is a citizen of Wisconsin, and Defendant Hunter Lift Holding, Ltd. is a citizen of Ohio. [Dkt. 1.] Plaintiff's claims arise from a workplace injury in Illinois and no federal claims or questions are presented in this matter. *See generally*, Second Amended Complaint at Law; [Dkt. 69 at 5]. Accordingly, Illinois law, not federal common law, applies to the privilege claims at issue. Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Jaffee v. Redmond*, 518 U.S. 1, 6 n.3, 116

S.Ct. 1923, 1926 n.3, 135 L.Ed.2d 337 (1196) ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."). Plaintiff claims privilege under the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILL. COMP. STAT. 110/1 (1979) (the "Mental Health Act"). [Dkt. 69 at 6.]

## II. Analysis

The Mental Health Act states that "all records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILL. COMP. STAT. 110/3. "Records" refers to "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient concerning the recipient and the services provided." 740 ILL. COMP. STAT. 110/2. "Communications" refers to "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. Communication includes information which indicates that a person is a recipient." *Id*. Addressing the intent and purpose of the legislation, the Illinois Supreme Court has emphasized,

> The Confidentiality Act is carefully drawn to maintain the confidentiality of mental-health records except in the specific circumstances explicitly enumerated. In each instance where disclosure is allowed under the Act, the legislature has been careful to restrict disclosure to that which is necessary to accomplish a particular purpose. When viewed as a whole, the Act constitutes a 'strong statement' by the General Assembly about the importance of keeping mental health records confidential.

*Norskog v. Pfiel*, 197 Ill.2d 60, 71-72, 755 N.E.2d 1, 14 (2001) (internal citations omitted).

Defendant Hunter Lift essentially makes two arguments in favor of compelling disclosure. The first claims Plaintiff waived privilege by sharing confidential information with his mother, providing Defendants with medical records which reference the November 2022 incident, and by seeking emotional damages. [Dkt. 64 at 3-5; Dkt. 72 at 3.] The second argues, in the alternative, and

primarily in reliance on the findings in *D.C. v. S.A.*, 178 Ill. 2d 551, 561, 687 N.E.2d 1032, 1037 (1997), that even if there was no waiver, the information should be disclosed as Defendant claims the information is "relevant, probative, admissible, not obtainable elsewhere, not unduly prejudicial" and "may be entirely decisive of defendants' liability." [Dkt. 64 at 5-6; Dkt. 72 at 4-5.] The Court finds Defendants have not shown that one of the enumerated exceptions applies.

In Defendant's initial motion, Defendant relied extensively on federal common law for support that Plaintiff waived any privilege claims by disclosing records that reference Plaintiff's mother's disclosure of the November 2022 incident. [Dkt. 64 at 3-5.] As discussed above, Illinois law governs here, not federal common law. In contrast to federal common law privilege principles, the Illinois Supreme Court has held that "[w]aiver of the privilege is recognized in very limited circumstances" with respect to the Mental Health Act. *Norskog*, 197 Ill.2d at 80. Further, the Illinois Supreme Court has held that "any confidential information which may have been shared…for a limited purpose [] did not constitute a general waiver of the confidentiality privilege." *Norskog*, 197 Ill.2d at 79-80 (finding Defendant did not waive confidentiality privilege where Defendant voluntarily shared mental health treatment records with school officials, court personnel, a probation officer, and others for a limited purpose).

Here, the parties agree Plaintiff's mother was aware, at least to some extent, of Plaintiff's prior medical history and disclosed the same to Plaintiff's treatment providers at the University of Chicago Medical Center following the incident that is the subject of this suit. [Dkt. 69 at 2; Dkt. 72 at 3.] The Court's in-camera review of Plaintiff's medical records indicates Plaintiff's mother described an *event* that occurred in November 2022. The treatment notes and records do not indicate that Plaintiff's mother had knowledge of or provided specific privileged records or communications (as defined in the Mental Health Act) related to the November 2022 incident. Rather, an in-camera review of the medical records shows that any specific diagnosis and treatment Plaintiff received related to the

4

November 2022 incident were obtained by the University of Chicago from an outside provider and are listed in Plaintiff's University of Chicago medical records as unverified. [Dkt. 71 at 3.] Disclosure between hospitals and providers does not constitute waiver. In fact, the Mental Health Act specifically carves out continuity of care as a valid reason for disclosure. 740 ILL. COMP. STAT. 110/9.2 ("For the purposes of continuity of care…licensed private hospitals, integrated health systems…may disclose a recipient's record or communications, without consent, to each other, but only for the purpose of admission, treatment, planning, coordinating care, discharge, or governmentally mandated public health reporting."). In the Court's view, it seems critical for a healthcare provider to be able to obtain information about a patient's medical history to facilitate as comprehensive a coordination of care as possible for any other injury or illness. This is what the Mental Health Act allows and what it appears the University of Chicago physicians did here.

Plaintiff did not waive privilege by producing medical records that reference the November 2022 incident as part of his Rule 26(a) disclosures. As Plaintiff contends, "Plaintiff produced University of Chicago and Shirley Ryan AbilityLab records because those providers treated his physical injuries from the June 7, 2023 occurrence. The references to the November 2022 incident appear only as historical references[.]" [Dkt. 71 at 3.] Like *Norskog*, here, the Court finds Plaintiff shared the information, for a limited purpose; the Plaintiff did not affirmatively place his health from six months prior at issue. *Norskog*, 197 Ill.2d at 79-80.

Further, Plaintiff did not place his mental health at issue simply by claiming ordinary emotional damages. Under the Mental Health Act, a recipient is deemed to have introduced his mental condition in an action involving pain and suffering "*only if* the recipient or a witness on his behalf first *testifies concerning the record or communication*." 740 ILL. COMP. STAT. 110/10(a)(1) (emphasis added). Plaintiff claims he did not raise any mental health issues during his deposition and, likewise, his treating physicians will not be testifying to any mental health issues. [Dkt. 69 at 9.] Yet, Defendant

5

argues Plaintiff put his mental health at issue simply because Plaintiff's Amended Rule 26 disclosures claim both emotional damages along with pain and suffering. [Dkt. 72 at 3.] However, the Illinois Supreme Court has rejected this premise. In *Reda v. Advocate Health Care*, the plaintiff suffered a physical neurological injury which was accompanied by changes in his personality, comprehension deficits, loss of memory, and more. *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 57 (2002). The Illinois Supreme Court held that the plaintiff "did not place his mental condition at issue merely by claiming pain and suffering." *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 57 (2002). The Court further explained that "[i]f that were true, in every case in which the plaintiff claimed damages stemming from a physical injury to the brain, the door to discovery of the plaintiff's mental-health records would automatically open, and the limited exception in section 10(a)(1) of the Act would effectively eviscerate the privilege." *Id*. at 58. Applying the same rationale to Plaintiff's emotional damages claims here that the *Reda* Court applied to pain and suffering claims, the Court finds that Plaintiff's alleged emotional damages and emotional distress are tied to the consequences of his physical trauma, not a mental health injury. To the extent Plaintiff testifies about any pain, fear, phantom pain, loss of normal life, etc., Plaintiff does not *ipso facto* place his mental conditions at issue. *Reda*, 199 Ill. 2d at 57-58 ("Our interpretation of section 10(a)(1) of the Act accords with earlier case law…a litigant claiming pain and suffering does not *ipso facto* place his or her mental conditions at issue.").

In reliance on *D.C. v. S.A.*, Defendant lastly contends that "fundamental fairness commands that the privilege yield" where the information sought "may be entirely decisive of defendants' liability, that it is relevant, probative, admissible, not obtainable elsewhere, not unduly prejudicial, and the interests favoring disclosure outweigh protection of the therapist-recipient relationship." [Dkt. 64 at 6; Dkt. 72 at 4-5.] However, the cases that Defendants rely on in support of disclosure are distinguishable from the facts of this case as there are no immediate post-accident records here (*i.e.* a

6

statement on Plaintiff's mental state or blood alcohol test results) that place Plaintiff's own actions at the time of the injury at issue. For example, in *D.C. v. S.A.*, there was reference in the immediate post-accident records that suggested the plaintiff "might have been attempting suicide at the time of the accident." *D.C. v. S.A.*, 178 Ill. 2d at 555. After the accident, the plaintiff was transferred to a mental health facility. *Id*. The Court there granted redacted disclosure of Plaintiff's mental health records as the contents of those records directly addressed whether the plaintiff's intentional conduct caused the very occurrence for which he sued. *Id*. at 555, 570. Similarly, in *Maxwell v. Hobart Corp.*,, the plaintiff's blood alcohol level after the accident at issue was high enough to presume plaintiff was under the influence of alcohol and as such, it was "possible that plaintiff's intoxication may have contributed to or even proximately caused the accident." *Maxwell v. Hobart Corp*., 216 Ill. App. 3d 108, 113, 576 N.E.2d 268, 272 (1991). Plaintiff's condition in *Maxwell* immediately after the accident placed plaintiff's condition at the time of the accident at issue and necessitated the Court's finding that discovery of plaintiff's history of alcoholism was critical. *Id*. at 113-114. Here, Defendants have pointed to no evidence which places Plaintiff's mental health at the time of the incident at issue. Defendants merely speculate and point to a single note in the hospital records which indicate that Plaintiff was "visibly depressed and anxious" in the hospital,[2] suggesting Plaintiff may have been having mental health issues on the date of the accident. [Dkt. 72 at 1.]. The Court notes that the entry Defendants point to is from the night of the injury which ultimately resulted in Plaintiff's amputation. Anyone in Plaintiff's position might have a similar emotional reaction to an injury resulting in amputation of a limb. The Court finds this singular note in Plaintiff's medical records insufficient to suggest Plaintiff's mental health at the time of the injury is at issue. Unlike in *D.C. v. S.A.* or *Maxwell v. Hobart Corp*, the fundamental fairness considerations are not present here.

---

[2] The Court recognizes that the document quoted here was provided for in-camera review. The Court quotes from a page of that review (and not related to the November 2022 incident which Plaintiff seeks to protect) solely for purposes of drawing a distinction between the cases Defendant relies on and the facts at issue in this case. The Court find it critical to briefly discuss this document and note for purposes of denying Defendants' motion to compel.

740 ILL. COMP. STAT. 110/10(a) permits disclosure

"after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm…"

Here, because the Court finds Plaintiff has not introduced his mental health as an element of his claim, the Court declines Defendant's request for the Court to conduct an in-camera inspection as to the medical records related to the November 2022 incident. There is no evidence presented to suggest that the subject records would be relevant to liability.

For the foregoing reasons, Defendant Hunter Lift's Motion to Compel [Dkt. 64] is DENIED.

**ENTERED: July 24, 2026**

_____
Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

8